UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

D'MARQUES GILL                                    CIVIL ACTION NO. 10-cv-0395

VERSUS                                           JUDGE WALTER

WARDEN, LOUISIANA STATE               MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

### Introduction

A Webster Parish jury convicted D'Marques Gill ("Petitioner") of second degree murder in connection with the shooting death of Petitioner's uncle.  Petitioner filed a direct appeal.  State v. Gill, 931 So.2d 409 (La. App. 2d Cir. 2006), writ denied, 948 So.2d 165 (La. 2007).  He also filed a state post-conviction application.  Petitioner now seeks federal habeas relief based on several claims presented on both direct appeal and collateral review.  For the reasons that follow, it is recommended that the petition be denied.

### Sufficiency of the Evidence

Petitioner spent the night at the home of his girlfriend, Lamiracle Gasaway, and returned in the morning to his grandmother's house, where he lived.  He discovered after taking a bath that some of his clothes and shoes were missing, and he confronted his uncle, Mark Oliver, whom he believed had taken the items.  Oliver also lived at the house, and witnesses testified that he was suspected of taking a video game, television, money, and other

items of property from the home in the past. There was also testimony that Oliver used marijuana and crack cocaine.

Petitioner confronted Oliver about the missing items and, after Oliver denied knowledge of them, returned to Ms. Gasaway's house.  She testified that Petitioner was carrying a gun when he arrived and told her "he was going to get Mark."  Tr. 134. Ms. Gasaway later drove Petitioner back to his grandmother's house. Present at the house were Foster Miles (who lived with the grandmother), Mark Oliver (the victim), and Petitioner's brother, Rico.

Ms. Gasaway testified that Petitioner got out of the car, approached Mark with the gun, and asked him where his items were.  Mark denied knowledge of the items multiple times, then a shot was fired.  Ms. Gasaway originally testified that she saw Petitioner fire the shot, but she later admitted that she was not actually looking at the two men when the gun was fired.  Rather, she was standing by her car and heard the gunshot.  Tr. 136-37, 148-49. She testified that, after the shot was fired, Mark mumbled something to Petitioner, who replied that he would shoot him again.  Tr. 137.

Foster Miles, who lived with Petitioner's grandmother, testified that Petitioner and Mark argued about missing pants.  When Petitioner went to Ms. Gasaway's house after the first argument, Mr. Miles attempted to convince Mark to leave, but Mark said he was not going anywhere.  Petitioner later returned and renewed his argument with Mark. Mr. Miles testified that he was standing outside by a burn barrel, not facing the two men, when he heard a gunshot and turned around.  He saw Mark stooping or squatting down, and he walked over

and saw that Mark had been shot.  He heard Petitioner say, "I'll shoot again."  Mr. Miles was then standing between the two men and told Petitioner and the others to take Mark to the hospital.  Petitioner had the gun down by his side.  Tr. 81-85.

Petitioner, Ms. Gasaway, and Rico put Mark in a car and drove him to a nearby hospital.  They left Mark there and returned home.  A few minutes later, they drove to Ms. Gasaway's house, and Petitioner went inside.  Police later recovered the murder weapon from beneath a bed inside that home.  Ms. Gasaway testified that Petitioner then said he wanted to go back to the hospital and check on Mark.  They were stopped by police during the trip, and Petitioner was taken into custody.

Petitioner admitted firing the fatal shot but pursued a lesser verdict or acquittal on the contention the shooting was accidental.  He testified that Mark was bigger than him and had been in jail "all his life."  Petitioner said he knew from wrestling with Mark that he could not handle him.  Tr. 177.  Petitioner testified: "So I was scared of him so I just pulled out the gun waiving it and asked where my stuff was, the gun went off."  Tr. 176-77.  On another occasion he testified: "So that's when I said I was trying to get my stuff back, just waiving the gun, and it went off."  Tr. 173.  Petitioner denied telling Ms. Gasaway that he wanted to get Mark, and he denied saying after the fatal shot that he would shoot Mark again.  Tr. 180-81.

The prosecutor made a pretrial plea offer for manslaughter, but Petitioner rejected it. Tr. 25. The jury was charged with the elements of second degree murder and manslaughter, as well as negligent homicide. Tr. 16-23. Second degree murder is the killing of a human

being when the offender has a specific intent to kill or inflict great bodily harm.  La. R.S. 14:30.1.  The lesser crime of manslaughter is a homicide which would be second degree murder but the offense was committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.  La. R.S. 14:31(A)(1).  A 12-person jury found Petitioner guilty, by an 11 to 1 vote, of second-degree murder.  Tr. 209-10.  Petitioner argues that the evidence was not sufficient to support the conviction of the more serious crime and should have resulted in the lesser manslaughter conviction.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on

federal habeas unless the decision was an objectively unreasonable application of the deferential <u>Jackson</u> standard. <u>Parker v. Matthews,</u>132 S.Ct. 2148, 2152 (2012).

The state court addressed this claim on direct appeal.  It reviewed the relevant evidence, cited the correct <u>Jackson</u> standard and found that the evidence was sufficient to allow a rational trier of fact to have found the essential elements of the crime proven beyond a reasonable doubt.  <u>State v. Gill</u>, 931 So. 2d at 411-12.  Stolen pants or shoes may be offensive but would not drive the ordinary person to such a fit of passion as to commit murder.  In any event, Petitioner's testimony and argument at trial was not that he pulled the trigger due to sudden passion or heat of blood.  Rather, he claimed that he was merely waiving the gun when he accidentally fired it.  Undermining that claim was the testimony of (1) a witness who quoted Petitioner as saying he was going to get the victim and (2) two eyewitnesses who quoted Petitioner as threatening to shoot the victim again.  These facts were more than ample for the jury to find intent and return a verdict for second-degree murder. This court cannot say that the state appellate court's decision of this issue was an objectively unreasonable application of the <u>Jackson</u> standard, so habeas relief is not permitted.

**Transcripts of Witness Testimony**

The prosecutor began his cross-examination of Petitioner by asking if Ms. Gasaway lied or told the truth when she testified that "while you had a gun at your house, you said, I'm going to shoot him."  Petitioner responded, "I did not say I wanted to get him."  The prosecutor replied that Petitioner said "you were going to shoot him, right?"

Page 5 of  21

Defense counsel then objected, noting that he had a hard time recalling precisely what Ms. Gasaway said when she testified the day before, but he did not recall her saying Petitioner said he was going to shoot Mark, "and maybe the transcript will bear that out, but I don't remember that."  The prosecutor said he would be happy to await a transcript but would leave it to the court as to how to handle the objection.  The court allowed the questioning to proceed, "as I believe that the witness testified to some degree and that the jury will be able to weigh those facts."  The prosecutor then moved on and asked if Ms. Gasaway and Mr. Miles had lied when they said Petitioner threatened to shoot the victim again, which he denied.  Tr. 180-81.

The judge received a question from the jury after deliberations began.  The jury asked to see the testimony of Ms. Gasaway and Mr. Miles.  The judge told the jury that, as he said in his preliminary instructions, the jury would have to rely on its memory of what happened at the trial.  Tr. 204.  Petitioner argued in his post-conviction application that it violated his constitutional rights to not have the transcripts presented to the jury after the prosecutor misled the jury that Ms. Gasaway quoted Petitioner as saying he was going to *shoot* Mark, which Petitioner said was compounded when the judge "testified" that this was Ms. Gasaway's testimony.

The prosecutor did misstate Ms. Gasaway's testimony, at least as it is reflected by the transcript.  But it is worth noting that Ms. Gasaway was told on a number of occasions to speak up because it was difficult to understand what she was saying.   In any event, the trial court denied this post-conviction claim because Louisiana Code of Criminal Procedure Art.

793 states that a juror must rely upon his memory in reaching a verdict, shall not be permitted to refer to notes or have access to written evidence, and "[t]estimony shall not be repeated to the jury."[1]  The trial judge does not have discretion to make exceptions to the rule, but the parties may agree to a waiver in express language reflected on the record.  State v. Adams, 550 So. 2d 595, 599 (La. 1989).

Petitioner raises two claims related to the jury not receiving the transcript.  He first argues that neither he nor his counsel were present when court was convened to address the jury's request.  The trial judge typically began sessions by stating who was present, but there was no such statement made when the jury was told it could not have the transcripts. Petitioner argues that this shows neither he nor his counsel were present, meaning he was deprived of the right to counsel at a critical stage of the case.  This contention goes in hand with his second argument that the transcripts should have been provided to the jury under the circumstances and could have been if counsel for both sides agreed.

These claims were adjudicated on the merits in the state court, so relief is available only if the state court adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable

---

[1] There are no record references to the post-conviction proceedings because counsel for the State did not number the pages in that part of the record. Counsel also did not include in the state-court record copies of the post-conviction application, related briefs, and decisions of the state appellate and supreme courts. Fortunately, Petitioner attached those items to his petition. Counsel should ensure that the entire state court record is filed in future cases.

determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).  Petitioner does not cite any particular Supreme Court authority that he contends was misapplied.   And to warrant relief with respect to either of the claims, Petitioner would have to show prejudice.

There is a virtual certainty that the prosecutor would not have stipulated to admit the transcript to the jury when it undermined his presentation of the evidence, and the code article would have prevented the judge from permitting the jurors the transcripts without that stipulation.  Even if it is assumed that Petitioner and his counsel were not present at the court's brief discussion with the jury about their inability to view the transcripts, there is no foundation for prejudice that would require vacating the conviction on federal habeas review.

**Prosecutorial Misconduct**

Petitioner argues that the prosecutor misled the jury into believing Ms. Gasaway said that Petitioner claimed he was going to "shoot" the victim.  This argument is based on the testimony discussed above, as well as the prosecutor's closing argument in which he said that Petitioner told Ms. Gasaway, "I'm going to shoot Mark."  Tr. 195.  He also faults the prosecutor for allowing Ms. Gasaway to state on direct examination that she witnessed the shooting, when she admitted on cross-examination that she did not actually see the shot fired.

Improper jury argument by the state does not provide a basis for habeas relief unless the argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 106 S.Ct. 2464, 2471 (1986).  The petitioner must also demonstrate prejudice by showing that the misconduct was so persistent and

pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks.  Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988); Turner v. Johnson, 106 F.3d 1178, 1188 n. 46 (5th Cir. 1997). To establish a claim for presentation of false testimony, the petitioner must show (1) the statements in question are actually false; (2) the prosecution knew that the statements were false; and (3) the statements were material. Napue v. Illinois, 79 S.Ct. 1173 (1959); Kimmel v. Quarterman, 199 Fed. Appx. 338, 344 (5th Cir. 2006).

The trial court rejected this post-conviction claim by finding it impossible to show from the contradiction on whether Ms. Gasaway saw the shot fired that the prosecutor presented false testimony.  He reasoned that when defense counsel brings about a correction by a witness of an untruthful statement made on direct, the defendant's constitutional rights are not violated.  The court did not address the argument that the characterization of Ms. Gasaway's testimony that Petitioner said he was going to get Mark was improper.  The state appellate court, as well as the Supreme Court of Louisiana, summarily denied the writ application.

Assuming the accuracy of the transcript of Ms. Gasaway's testimony, the prosecutor did mischaracterize her testimony by inflating her statement that Petitioner said he would "get" the victim to being that he would "shoot" the victim.  Whether this was intentional is difficult to say, but even defense counsel and the trial judge were not certain about the precise testimony.  Assessment of this claim would be simpler had the state court addressed it in a more direct fashion, but the undersigned is persuaded that habeas relief is not permitted

under <u>Darden</u> as judged by the deferential Section 2254(d) standard.  The mischaracterization or mistake, however it is seen, did not infect the trial with unfairness, and it does not give grounds to believe that the conviction would not have occurred but for the improper remarks. Both versions of the testimony indicated a desire to seek some sort of revenge against the victim, who Petitioner admittedly shot, and two witnesses testified he immediately threatened to shoot the victim again.  The prosecutor's apparent mistake is regrettable, as accuracy is desired in criminal prosecutions, but it does not provide a basis to vacate the murder conviction on federal habeas review.

**Judge Vouching for Witness**

Petitioner argues that the trial judge erred when he overruled the defense's objection to the prosecutor suggesting that Ms. Gasaway quoted Petitioner as saying he was going to shoot the victim.  Petitioner claims that the judge not only erred in overruling the objection but repeated the testimony of Ms. Gasaway and vouched for the content of her testimony.

The trial judge rejected this post-conviction claim, stating that he simply allowed further discussion on the issue and did not comment on any facts of the case.  The record bears him out.  The judge's response to the objection and argument was: "I will allow the line of questioning, as I believe that the witness testified to some degree and that the jury will be able to weigh those facts.  So I will allow the line of questioning." Tr. 180-81.  The judge did nothing to mislead the jury, endorse the prosecution's version of the facts, or restate Ms. Gasaway's testimony.  Petitioner's argument on this issue relies on an exaggeration of the record and should be rejected.

**Ineffective Assistance of Counsel**

### A.  Introduction

Petitioner raised several grounds for ineffective assistance of counsel.  The trial court denied all of them.  The state appellate court held that, with one exception, Petitioner "failed to meet his threshold burden of establishing the claims raised herein."  The exception was "a colorable claim of ineffective assistance relative to the failure to interview and/or call known witness El Rico Gill."  That claim was remanded, a hearing was held, and it was again denied.

### B.  **Strickland and Habeas Review**

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied

it. The federal court's review is thus "doubly deferential." <u>Knowles v. Mirzayance</u>,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. <u>Id</u>.  Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable." <u>Id</u>.

Finally, a <u>Strickland</u> petitioner must overcome the limitations of Section 2254(d) "on the record that was before the state court." <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388 (2011).  It is reversible error for a federal district court to hold a federal hearing to flesh out such a claim. <u>Pape v. Thaler</u>, 645 F.3d 281, 288 (5th Cir. 2011).

### C.  No Article 772 Objection

Petitioner argues that counsel should have objected to the judge's alleged violation of La. C. Cr. P. Art. 772 – which prohibits a judge from commenting upon the facts of the case in the presence of the jury – when the judge ruled on the objection to the cross-examination of Petitioner about Ms. Gasaway's testimony.  The trial judge's ruling on the objection was not an improper comment on the facts of the case.  He did not pick sides in the debate over what Ms. Gasaway said, and he left the issue to the jury.  There was no basis for counsel to object to the ruling as a comment on the evidence. Failure to make a meritless objection is not ineffective assistance.  <u>Clark v. Collins</u>, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

### D.  No Impeachment

The prosecutor called Ms. Gasaway on direct examination and asked her if she saw Petitioner fire the shot.  She answered, "Yes."  She admitted on cross-examination, however, that she was not actually looking at the men when the gun was fired so she did not see the actual shooting.  Tr. 137, 149.

Petitioner argues that defense counsel should have asked "numerous questions" about why Ms. Gasaway first told the prosecutor she saw Petitioner fire the shot.  Petitioner does not suggest what any of those questions should have been.  He states that the most important issue in the case was whether Petitioner was waiving the gun when it accidentally fired or deliberately shot the victim.  That is true, but Ms. Gasaway never testified that she believed Petitioner intentionally fired the shot because of something she saw in his body language or otherwise at the time the shot was fired.  The prosecutor did not even ask her whether Petitioner was aiming or waiving the gun when it fired.  Counsel succeeded in showing that Ms. Gasaway did not witness the shooting, and there is no basis to believe that he could have "further" impeached her on this point in any way that would have benefitted the defense.

### E.  Sequestration Rule Violation

Officer Murphy Robertson was a witness for the prosecution.  Before he testified, defense counsel stated to the court that he was in the hall when he heard Robertson and Mr. Miles speaking.  Counsel said all he overheard was "Rico," which is the name of Petitioner's brother.  Counsel said he did not know the extent of the conversation but wanted to ask the court to admonish the witnesses to mind the rule of sequestration.  The court asked counsel

if he wished to ask Robertson about the content of the conversation, but counsel said he did not and would not raise an objection.  Tr. 107-09.

Petitioner argues that counsel was ineffective because he did not demand that Robertson be questioned about the content of the conversation to ensure that there was no prejudice to the defense.  Robertson's brief testimony was that he obtained consent to search from Ms. Gasaway and located the murder weapon under a mattress in her bedroom.  Tr. 55-59.

Petitioner concludes that the conversation between the witnesses had to be about his case because Rico was mentioned, and Rico was an eyewitness.  There might have been a number other reasons for the men to mention Rico on topics wholly unrelated to this case, so that is not persuasive. It is pure speculation that had counsel inquired about the conversation between Mr. Miles and Officer Robertson it would have resulted in a different outcome in the case.  Even if Robertson's testimony had been excluded, which is highly unlikely to have happened, it was not critical to the prosecution.  Petitioner stipulated that he shot the victim.  The only issue was whether it was done with specific intent to kill or inflict great bodily harm.   Robertson's testimony had nothing to do with that issue. Accordingly, there is no basis for a finding of prejudice with respect to this claim.

### F.  Uncalled Witnesses

Petitioner filed with his post-conviction application an affidavit from El Rico Gill, his brother, who testified that he was at the scene of the shooting and had expected to be called to testify at trial.  He stated that he would have testified that Petitioner "did not intend to

shoot Mark Oliver" and that Petitioner "was waiving the gun in a threatening manner when it discharged, striking Mr. Oliver."  Rico testified at an evidentiary hearing on the post-conviction application.  He said that defense counsel never interviewed him.  When asked what happened at the crime scene, he testified:

> What happened was - - well, I don't know how to just really say it, but it went down, the only thing I know the gun had just went off.  It wasn't just a purpose shooting like he tried to do it.

Rico (himself now imprisoned for drug dealing) was asked what he saw that gave him an indication the shooting was accidental.  He answered, "because if he was trying to shoot someone he would have shot them in the head or something."  (The bullet entered the victim's upper arm and traveled into the chest area.)  When asked if he knew what his brother "was doing with the gun" when he was arguing with Mark, Rico answered: "Can't remember that's been long ago."  He was sure, however, that Petitioner was attempting to scare the victim.

Defense counsel was also called as a witness at the hearing.  He expressed very little memory of the trial that happened about four years earlier.  He said he could not testify with any degree of accuracy whether he discussed Rico's possible testimony with Petitioner or interviewed Rico about the shooting.

The trial judge, after hearing the evidence, said that he could not second guess the possible strategy of the defense.  He reasoned that it "may have been" that counsel determined Rico would not help the defense.  He added that there was no clear and

convincing evidence that the testimony would have helped if the witness were called.  The

state appellate court denied a writ application on the issue, reasoning:

> Even if error on the part of the trial attorney is assumed, the applicant has
> failed to show that but for counsel's unprofessional errors, there is a
> reasonable probability the outcome of the trial would have been different. . .
>
> There was sufficient evidence presented during the trial of the matter to prove
> that the defendant intentionally shot the victim during an altercation.  The
> applicant failed to show that there is a reasonable probability that the outcome
> of the trial would have been different had Mr. L' Rico Gill's testimony been
> presented to the jury.

Petitioner's focus is that counsel's failure to identify an eyewitness has been held to

run afoul of the standard of competent counsel.  See Anderson v. Johnson, 338 F.3d 382, 391

(5th Cir.2003).  The ruling, however, rested on the prejudice prong of the Strickland analysis.

The state court's assessment of prejudice, which asks whether there is a reasonable

probability the result of the case would have been different, was not objectively

unreasonable.  Rico offered no testimony at the hearing that was substantially different from

what was heard at trial.  He offered his opinion that the shooting was accidental but he

described no particular facts to support it.  His affidavit, which was likely not drafted by him,

described Petitioner as waiving the gun, but Rico said at the hearing that he could not

remember what Petitioner was doing with the gun during the argument.  His assumption that

the shooting was accidental was based on the lack of a head wound, which is frankly

ridiculous. There is no likelihood of a different verdict if counsel had interviewed and called

Rico as a witness.  The state court's resolution of this Strickland claim is not subject to being

overturned on habeas review.

Petitioner also argued in his post-conviction application that counsel should have called witnesses Debra West and Johnny Harris, who would have testified that the victim attempted to sell them Petitioner's clothes on the day of the shooting and that Petitioner was aware of that fact.  They purportedly would also testify that the victim had stolen from Petitioner in the past and used the proceeds to buy drugs.  The state trial court reasoned that counsel called all witnesses that would have truly helped the defense and likely did not call these two witnesses because their information would not negate any element of the case or present a mitigating factor.  The claim was summarily denied by the higher courts (with the remand being confined to failure to interview/call Rico).  Petitioner does not point to affidavits from these witnesses.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000). And for Petitioner to demonstrate the requisite Strickland prejudice, "[he] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." Id. Evans reversed a district court that had granted habeas relief on a similar Strickland claim. The district court was faulted for assuming that witnesses, from whom no affidavits were presented, would have testified favorably for the defense.

Neither of these witnesses, who did not see the shooting, could have supported the defense theory that the shooting was accidental.  They might have helped with the manslaughter defense, but it is unlikely that a jury would be persuaded that a theft of clothes

would give rise to such sudden passion and heat of blood, when the argument spanned a

significant period that included Petitioner leaving and returning to the house, as to excuse a

homicide.  The complaint that these witnesses were not called is simply too speculative to

permit overturning the state court's rejection of the claim.

Petitioner did present the state court with an affidavit from Foster Miles, who said he

was nervous on the stand and "really didn't hear D'Marques say he will shoot Mark again."

Miles added that he knew only that he heard a shot and Petitioner took Mark to the hospital.

"Everything else I added cause I heard other people saying D'Marques said this and that so

that's what I went off of."  Petitioner faults defense counsel for not interviewing Miles before

trial and learning that Miles' testimony would be based on what other people told him.

Failure to interview an eyewitness, even if there is a vigorous cross-examination at

trial, is generally deficient representation.  Anderson v. Johnson, 338 F.3d at 391, citing

Bryant v. Scott, 28 F.3d 1411, 1417 (5th Cir. 1994).[2]  But there is no hint in the trial

_____

[2] The Fifth Circuit has followed the pre-AEDPA holding in Bryant in AEDPA
cases such as Anderson, but the current law prohibits habeas relief on a claim the state
court adjudicated on the merits unless it is contrary to or an unreasonable application of
federal law "as determined by the Supreme Court of the United States." 28 U.S.C. §
2254(d)(1). Petitioner does not cite a Supreme Court decision that categorically holds that
failure to interview an eyewitness is incompetence and may not be cured by cross-
examination. The Supreme Court has emphasized that habeas relief is not appropriate if
based on a rule of law endorsed by circuit courts but not an actual holding of the Supreme
Court. Renico v. Lett, 130 S.Ct. 1855 (2010) (circuit court's decision that interpreted
supreme court decision was not clearly established law for habeas purposes). See also
Howes v. Fields, 132 S.Ct. 1181, 1187 (2012) (categorical rule regarding when a prisoner
is in custody not a part of a supreme court holding; grant of habeas reversed). The
undersigned will follow Anderson, but this may be an issue for consideration by a higher
court.

transcript that Mr. Miles was merely repeating hearsay, as he now claims, and that a pretrial interview by counsel would have uncovered such.  He testified quite plainly that he actually heard Petitioner's statement.

His testimony was that he heard the shot, then turned and walked toward the men.  He then testified:

Q.    Did you hear anything?

A.    I did.

Q.    What did you hear?

A.    [Petitioner] said, "I'll shoot again."  But I was standing between them then.  About that time I told them, no, ya'll take him to the hospital.  He didn't have the gun up, he had it down.  Like to his side.

Tr. 85.

There is no reasonable basis to believe that Mr. Miles would have, in view of such clear testimony, told counsel in a pretrial interview that he was merely repeating hearsay or giving false testimony.  His affidavit offers no plausible reason for him to have done that, saying only that Petitioner had been a problem for him and done things to aggravate him. Under these circumstances, the state court's rejection of this Strickland claim was not objectively unreasonable.

**Ineffective Appellate Counsel**

Petitioner states in his federal petition that he wrote numerous letters to appellate counsel and asked him to raise all sound and meritorious claims. He asserts that it is

"apparent after a review of the record" that there were colorable claims that should have been raised on direct appeal.  Petitioner does not identify any such claim.

When a petitioner claims that counsel omitted an issue that should have been argued, the petitioner must show that had the issue been raised there was a reasonable probability that he would have won on appeal. Smith v. Robbins, 120 S.Ct. 746, 764 (2000); Moreno v. Dretke, 450 F.3d 158, 168 (5th Cir. 2006).  The state court rejected this claim as being "completely unsupported" by facts or evidence. Petitioner has yet to identify any particular issue that would permit relief under this standard, so habeas relief is not available on this final claim.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied** and **dismissed with prejudice**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 21st day of February, 2013.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE